UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| S.M. ex rel. G.M. & R.M., <br><br> Plaintiffs, <br><br> v. <br><br> THE SCHOOL DISTRICT OF UPPER DUBLIN, <br><br> Defendant. | CIVIL ACTION <br><br> No. 10-4038 |

August 18, 2011

**MEMORANDUM**

On August 12, 2010, R.M. and G.M., on behalf of their son and themselves, filed a complaint against the School District of Upper Dublin, asking the court to grant them an award of attorneys' fees. The defendant seeks summary judgment on the issue of whether plaintiffs were a "prevailing party" under the relevant fee-shifting statute. For the reasons that follow, the defendant's motion for summary judgment will be denied.

**I.       Factual Background**

S.M. is an elementary school student who lives in Upper Dublin, Montgomery County, Pennsylvania. Compl. ¶ 1. S.M. was born with a severe allergy to peanut and tree nut products. Compl. ¶ 7. Early in 2008, and prior to S.M. starting kindergarten in the Upper Dublin School District ("the District"), his parents, R.M. and G.M., approached

the District about creating a Section 504 Plan for S.M.  Compl. ¶ 8.  A Section 504 Plan specifies the accommodations and modifications the school district will offer to ensure that a disabled student receives an appropriate education.  *See Breanne C. v. S. York Cnty. Sch. Dist.*, 732 F. Supp. 2d 474, 479 (M.D. Pa. 2010) ("[A] § 504 service plan, . . . is meant to ensure that [the student] is provided with a FAPE [free appropriate public education].").

Plaintiffs retained a law firm, Ronald V. McGuckin and Associates, to assist in the negotiations leading to the formulation of a Section 504 Plan.  Compl. ¶ 11.  Discussions and negotiations between the parties occurred between May 2008 and October 2008.  Compl. ¶ 12.  Although plaintiffs maintain that they were "never presented . . . with an acceptable plan," they "relented" and signed a Section 504 Plan in October of 2008 which applied to S.M.'s 2008–09 school year.  *Id.*  R.M. and G.M. began meeting with District officials in Spring 2009 to formulate a "proper" Section 504 Plan for the next school year.  Compl. ¶ 13.  In July 2009, they retained the services of another attorney, David Arnold, in an effort to avoid "being bullied again into taking an inappropriate [Section] 504" Plan.  Compl. ¶ 15.

In October 2009, plaintiffs filed for a due process hearing because they were unable to reach an agreement that satisfied them.  Compl. ¶ 16.  In the due process request, plaintiffs presented nine objections to the 2008–09 Section 504 Plan.  Due Process Compl. Attach. 3–7 (Docket No. 19, ex. 1).  The hearing spanned seven sessions

between November 2009 and March 2010. Compl. ¶ 17. On April 2, 2010, the Hearing Officer, Anne Carroll, rendered her decision in the case. Compl. ¶ 17–18. In her decision, Carroll ordered the District to:

> 1. Convene [S.M.'s] §504 team to revise the written [plan] in the following respects:
>
>> a. Assure that all protections and accommodations currently provided to [S.M.] are reflected in the terms of the written §504 [Plan] by including
>>
>>> i. training of substitute teachers to respond to an allergic reaction;
>>>
>>> ii. prohibiting serving all items containing traces of peanuts/tree nuts; items manufactured or processed in a facility where peanut/tree nut products are manufactured and all homemade items, as well as peanut/tree nut products, in classrooms at [S.M.'s] grade level;
>>
>> b. Add a provision permitting [S.M.] to go to the nurse for evaluation/treatment of possible allergic reactions at his request, as well as by referral from school staff.
>
> 2. Inform the [Parent/Teacher Organization] that it is obligated to implement the §504 [Plan] with respect to any program/activity conducted within an Upper Dublin school building or on school grounds.

Hearing Officer's Order 23 (Docket No. 19, ex. 4).

On August 12, 2010, plaintiffs filed the present complaint seeking an award of attorneys' fees that they incurred during the formulation of the Section 504 Plan and work related to the due process hearing. Compl. ¶ 17. They ask for an award in excess of $45,000, including: (1) $7,910.00 in fees paid to Ronald V. McGuckin and Associates;

(2) $35,760.00 in fees and $175.96 in expenses paid to their current attorney; (3) $2,816.00 paid in expert fees; and (4) all expenses and attorneys' fees incurred by bringing the present action.  Compl. 4–5.

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is material when "its resolution 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In examining the record before it, the court is "required to view the facts and draw inferences in the light most favorable to the nonmoving party." *Ray v. Twp. of Warren*, 626 F.3d 170, 173 (3d Cir. 2010).

The moving party bears the burden of informing the court of the basis for its motion and identifying the portions of the record that show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Where . . . the non-moving party bears the burden of proof at trial, summary judgment is appropriate if the non-movants fail to 'make a showing sufficient to establish the existence of an element essential to [their] case.'" *In re TMI*, 89 F.3d 1106, 1116 (3d Cir. 1996) (quoting

4

*Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993)).

### III.   "Prevailing Party" Doctrine

Section 504 of the Rehabilitation Act of 1973 provides that:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a).  In an educational setting, "[s]tates that receive federal funding [must] provide a free appropriate public education . . . to all disabled students."  *Ferren C. v. Sch. Dist. of Philadelphia*, 612 F.3d 712, 717 (3d Cir. 2010) (citing 20 U.S.C. § 1412(a)(1)(A)).  A party that is discontent with a school district's actions under the Rehabilitation Act of 1973 may file for a due process hearing.  *See* 34 C.F.R. § 104.36.  Under 29 U.S.C. § 794a(b), "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs" incurred in a proceeding to enforce a provision of the Rehabilitation Act of 1973.

"In order to be a 'prevailing party,' a party must be 'successful' in the sense that it has been awarded some relief by a court."  *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 853 (3d Cir. 2006) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001)).  "'[A] plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'"  *Id.*

at 855 (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)). Moreover, "[w]here such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award . . . not to the availability of a fee award *vel non*." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989); *see also P.N.*, 442 F.3d at 856 ("The relevant inquiry is whether plaintiffs' success was significant. Regardless of how substantial their success, if plaintiffs succeeded on a significant issue they are entitled to prevailing party status."). In sum, a prevailing plaintiff must have succeeded on a significant claim, and the success must have altered the defendant's behavior and materially altered the legal relationship between the parties.

In this case, the defendant argues that "it is very difficult to understand how [plaintiffs] can argue that they prevailed at the hearing, when they did not obtain the vast majority of what they requested in their complaint." Mot. for Summ. J. 9. The defendant also argues that the Hearing Officer's "order did not materially alter the relationship between the District and Plaintiffs, it merely **clarified** the relationship." Mot. for Summ. J. 10 (emphasis in original); *see also* Hearing Officer's Op. 22 (Docket No. 19, ex. 4) ("The administrative due process hearing consumed considerable time and resources for little or no gain, except to clarify the legal rights and obligations of the parties."). However, these arguments miss the mark. It is not appropriate for the court to consider at this stage the proportion of claims the plaintiffs succeeded on, whether the relief obtained was substantial, or how the Hearing Officer characterized her order.

The first element the court must consider is whether the plaintiffs succeeded on a significant[1] issue at the due process hearing.  *P.N.*, 442 F.3d at 855.  Whether a claim is significant depends on the issues and the facts of the case.  In this case, it is significant that the District was ordered to tell the Parent Teacher Organization that it was "obligated to implement the [Section] 504 [Plan] with respect to any program/activity conducted within an Upper Dublin school building or on school grounds."  Hearing Officer's Order 23 (Docket No. 19, ex. 4).  While allowing a student to participate in an extracurricular cooking class may seem trivial in some instances, S.M. has "a protected right to enjoy all the benefits of a public school education, beginning with the right to be as safe as all other students while attending school."  Hearing Officer's Op. 18 (Docket No. 19, ex. 4); *see also* 34 C.F.R. § 104.37 ("A recipient to which this subpart applies shall provide non-academic and extracurricular services and activities in such manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities.").  The court is satisfied that this claim was a significant one.

The second element the court considers is whether the defendant's behavior was

---

[1] The Third Circuit makes a distinction between "significant" and "substantial" success.  "Significant" success concerns whether a plaintiff has "'succeed[ed] on any *significant* issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"  *P.N.*, 442 F.3d at 855 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  "Substantial" success concerns the "'degree of the plaintiff's overall success,'" and it "'goes to the reasonableness of the award under *Hensley*, not to the availability of a fee award *vel non*.'"  *Id.* at 856 (quoting *Truesdell v. Philadelphia Hous. Auth.* 290 F.3d 159,  166 (3d Cir. 2002)).  In other words, "significant" success is a question of fee *eligibility*, whereas "substantial" success is a question of the fee *amount*.

materially altered as a result of the Hearing Officer's order. *P.N.*, 442 F.3d at 855. Here, the Hearing Officer ordered the District to "inform the [Parent/Teacher Organization] that it [was] obligated to implement the §504 [Plan]." Hearing Officer's Order 23 (Docket No. 19, ex. 4). This necessarily altered the District's behavior because the District became required to do something that it had not done in the past. The District had argued that it "cannot be held responsible for PTO activities," but as the Hearing Officer eloquently stated, "the District must also assure that Student is not denied access to non-academic programs/activities offered as a school activity by a provider other than the District" because "the PTO program in question is equivalent to a recreational extra-curricular school activity." Hearing Officer's Op. 19 (Docket No. 19, ex. 4).[2]

The last element the court considers is whether the Hearing Officer's order changed the legal relationship between the parties. Here, the legal relationship did change because the District can no longer turn a blind eye to the Parent/Teacher Organization's activities while the organization uses the District's buildings at no

---

[2] The revisions to S.M.'s Section 504 Plan which ensure that the plan reflected all protections and accommodations which were already provided to S.M. did not, however, change the District's behavior. As the Hearing Officer found (and her findings are not challenged in this action), the District (1) already trained substitute teachers charged with S.M.'s schooling, (2) already prohibited items which might contain peanut or tree nut products from being served in classrooms at S.M.'s grade level, and (3) already allowed students to go to the nurse when they felt sick. Hearing Officer's Op. 5, 6, 22 (Docket No. 19, ex. 4). Plaintiffs cannot "alter the [defendant's] behavior toward them for their benefit" if the defendant's behavior already conforms to what the plaintiff seeks. *P.N.*, 442 F.3d at 855.

cost—the plaintiffs now have an enforceable order from the Hearing Officer.

Thus, the court is satisfied that the plaintiffs fulfilled the requirements to be a prevailing party.

### III.     Conclusion

For the foregoing reasons, defendant's motion for summary judgment will be denied.