# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **S.M., by and through his parents** | : | |
| **and guardians, G.M. and R.M., and** | : | **CIVIL ACTION** |
| **G.M. and R.M. in their own right,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THE SCHOOL DISTRICT OF** | : | |
| **UPPER DUBLIN,** | : | **No. 10-4038** |
| **Defendant.** | : | |

## MEMORANDUM

**Schiller, J.**                                                                      **July 20, 2012**

S.M., an elementary school student, and his parents are seeking attorneys' fees from Upper

Dublin School District (the "District") for work in creating, litigating, and enforcing a Section 504

service plan under the Rehabilitation Act. Currently before this Court is Plaintiffs' motion for

summary judgment requesting $77,435 in attorneys' fees, $525.96 in costs, and $2,816 in expert fees

pursuant to 29 U.S.C. § 794a. As Judge Pollak has already held that Plaintiffs are a prevailing party,

the Court treats this motion as a petition for attorneys' fees. For the following reasons, the Court will

grant this motion but will reduce Plaintiffs' recovery to account for their limited success.


## I.      BACKGROUND

### A.      Administrative Action

S.M., who lives in Upper Dublin, Montgomery County, Pennsylvania, was born with a severe

allergy to peanut and tree nut products. (Pls.' Mot. for Summ. J. Ex. 1 [Due Process Compl.] at 1.)

Early in 2008, before S.M. started kindergarten in the District, S.M.'s parents approached the District

about creating a Section 504 plan for S.M. under the Rehabilitation Act, 29 U.S.C. § 794. (*Id.*) A

Section 504 plan specifies the accommodations and modifications that a school district will provide to ensure that a disabled student receives an appropriate education. *See Blunt v. Lower Merion Sch. Dist.*, 262 F.R.D. 481, 486 n.4 (E.D. Pa. 2009).

Plaintiffs retained a law firm, Ronald V. McGuckin and Associates ("McGuckin"), and after several months of negotiation, the parties signed a Section 504 service agreement for 2008-09, S.M.'s kindergarten year. (Pls.' Br. in Supp. of Mot. for Summ. J. [Pls.' Br.] at 2.) Plaintiffs maintain that they were "never presented . . . with an acceptable plan" but that they "relented" and signed the Section 504 plan. (*Id.* at 2.)

In Summer 2009, Plaintiffs began meeting with District officials to formulate a Section 504 plan for the 2009-10 school year. (Due Process Compl. at 3.) In July 2009, they retained the services of another attorney, David Arnold, in an effort to avoid "being bullied again into taking an inappropriate [Section] 504" plan. (Pls.' Br. at 2.) However, in October 2009, Plaintiffs filed a Due Process Complaint with the Pennsylvania Department of Education after they were unable to reach a satisfactory agreement. (Due Process Compl. at 3.)

In their Due Process Complaint, Plaintiffs presented nine objections to the 2008-09 and the proposed 2009-10 Section 504 plans. (*Id.* at 1-7.) First, Plaintiffs wanted substitute teachers trained in emergency procedures. (*Id.* at 3.) Second, they requested a ban on all items containing peanuts or tree nuts, including items made in facilities that manufacture or package peanut or tree nut products and any items containing traces of peanuts, from grade-wide classroom activities and the daily snack. (*Id.* at 4.) Third, they asked for S.M.'s lunch table to be washed with soap and water after every use and to have the seating arrangement changed so that S.M. was not isolated. (*Id.* at 4-5.) Fourth, they wanted students to wash their hands with soap and water rather than antibacterial wipes. (*Id.* at 5.)

2

Fifth, they sought to ensure that S.M. had the opportunity to go on all field trips. (*Id.* at 5-6.) This would require the District to wipe school bus seats with soap and water before S.M.'s use and to ban all eating on the bus that was not medically necessary. (*Id.*) Sixth, they petitioned for all home-baked items to be sequestered from food that was deemed "safe" for S.M.'s consumption. (*Id.* at 6.) Seventh, they asked for S.M. to have his own computer keyboard and for all other shared equipment to be cleaned with soap and water before S.M.'s use. (*Id.* at 7-8.) Eighth, they requested that S.M. have access to the nurse anytime he felt an oncoming allergic reaction. (*Id.* at 8.) Ninth, they sought an effective monitoring mechanism to ensure that the District was complying with the regulations. (*Id.* at 9.)

On April 2, 2010, Hearing Officer Anne Carroll rendered her decision in the case. (Pls.' Mot. for Summ. J. Ex. 3 [Due Process Hr'g Order] at 23.) She ordered the District to:

1.  Convene [S.M.'s] § 504 team to revise the written [plan] in the following respects
    a.  Assure that all protections and accommodations currently provided to [S.M.] are reflected in the terms of the written § 504 [plan] by including
        i.   training of substitute teachers to respond to an allergic reaction;
        ii.  prohibiting serving all items containing traces of peanuts/tree nuts; items manufactured or processed in a facility where peanut/tree nut products are manufactured and all homemade items, as well as peanut/tree nut products, in classrooms at [S.M.'s] grade level;
    b.  Add a provision permitting [S.M.] to go to the nurse for evaluation/treatment of possible allergic reactions at his request, as well as by referral from school staff.
2.  Inform the [Parent-Teacher Organization] that it is obligated to implement the § 504 [plan] with respect to any program/activity conducted within an Upper Dublin school building or on school grounds.

(*Id.*)

3

The Hearing Officer's decision was in Plaintiffs' favor on six of their objections to the prior and proposed Section 504 plans. Plaintiffs also succeeded in requiring the Parent-Teacher Organization ("PTO") to follow the service agreement and in incorporating into the legally binding Section 504 agreement services that the District had been voluntarily providing. (*Id.* at 18-19, 21.) In addition, the parties reached a settlement on their requests involving the lunch table, lunchtime seating arrangement, bus cleanliness, and eating on the bus during field trips. (*Id.* at 16; Pls.' Reply Br. in Supp. of Mot. for Summ. J. [Pls.' Reply Br.] at 4.) However, Plaintiffs were unsuccessful in getting S.M. his own keyboard and in changing the hand-washing policy and the cleaning policy for shared equipment. (Due Process Hr'g Order at 20-21.)

At the conclusion of the Due Process Hearing, Plaintiffs had expended $42,705 in fees and costs. (*See* Pls.' Mot. for Summ. J. Ex. 5 [McGuckin Att'y Fees]; Pls.' Mot. for Summ. J. Ex. 7 [Arnold Att'y Fees].) The accommodations achieved in the Due Process Hearing were subsequently incorporated into the 2010-11 service plan, but Plaintiffs felt that the agreed-upon accommodations were not being fully implemented and filed a Pennsylvania Department of Education ("DOE") complaint in September 2011. (Pls.' Reply Br. Ex. 1 [DOE Compl.] at 10.) The DOE found that the District did not comply with the Section 504 agreement during the 2010-11 school year, but that the DOE could take no action because there was no evidence of non-compliance during the 2011-12 school year. (Pls.' Reply Br. Ex. 2 [DOE Decision] at 29-30.) Plaintiffs expended an additional $13,740 to enforce the accommodations achieved through the Due Process Hearing. (*See* Arnold Att'y Fees.)

**B.    Fee Petition**

On August 12, 2010, Plaintiffs filed the present Complaint seeking attorneys' fees incurred

during the formation of the Section 504 plan and work related to the Due Process Hearing. (Compl. ¶¶ 21-26.) The Complaint requested an award of $43,670 in attorneys' fees, $175.96 in costs, $2,816.00 in expert fees, and all fees in conjunction with the case to collect fees. (Compl. ¶¶ 21-26.) The total sought at the time the Complaint was filed was $46,661.96. (*See id.*) The case was assigned to the Honorable Louis H. Pollak.

On August 18, 2011, Judge Pollak concluded that "the plaintiffs fulfilled the requirements to be a prevailing party." *S.M. ex rel. G.M. v. Sch. Dist. of Upper Dublin*, Civ. A. No. 10-4038, 2011 WL 3678325, at *4 (E.D. Pa. Aug. 18, 2011). On November 17, 2011, the District made an offer of judgment of $15,000 for the settlement of all claims. (Pls.' Mot. for Summ. J. Ex. 12 [Offer of J.].) Plaintiffs rejected the offer of judgment because it was substantially less than the $46,661.96 in fees and costs requested at the time the Complaint was filed or the $54,671.96 in fees and costs expended as of the date of Defendant's offer. (Compl. ¶¶ 21-26; Pls.' Reply Br. at 4-5; *see* McGuckin Att'y Fees; Arnold Att'y Fees.) On April 6, 2012, Plaintiffs filed the motion for summary judgment presently before the Court, seeking $74,175 in attorneys' fees, $525.96 in costs, and $2,816 in expert fees, which includes the $30,5050 in fees expended since the Complaint was filed. (Pls.' Mot. for Summ. J. at 2.) After Judge Pollak's passing, the case was reassigned to this Court's docket. In Plaintiffs' reply dated June 6, 2012, they sought an additional $3,260. (Pls.' Reply Br. at Ex. 3 [Apr. 9, 2012-May 14, 2012 Fees].)

## II.    DISCUSSION

### A.    Fee Shifting Under the Rehabilitation Act

The Rehabilitation Act authorizes an award of reasonable attorneys' fees to a prevailing

party. 29 U.S.C. § 794a(b). "Our case law construing what is a reasonable fee applies uniformly to all fee shifting statutes." *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 677 (3d Cir. 2002) (alteration, quotation marks, and citation omitted). To arrive at a reasonable award of attorneys' fees, a court must calculate the lodestar, which is the number of hours reasonably expended multiplied by a reasonable hourly rate for legal services. *See McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009).

The prevailing party has the burden of proving the reasonableness of its fee request. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The court can decrease a fee award based on objections of the adverse party. *Id.* The court may also exclude time expended that is excessive, redundant, or otherwise unnecessary. *Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 595 (3d Cir. 2000). A party seeking fees must describe with sufficient clarity and detail the hours devoted to various general activities, such as settlement negotiations or discourse, to allow the court to determine if the time spent was reasonable. *Rode*, 92 F.2d at 1190; *see also Neena S. ex rel. Robert S. v. Sch. Dist. of Phila.*, Civ. A. No. 05-5404, 2009 WL 2245066, at *4 (E.D. Pa. July 27, 2009). "Nevertheless, 'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'" *Neena S.*, 2009 WL 2245066, at *4 (quoting *Rode*, 892 F.2d at 1190).

### B.    Limited Success

Because Judge Pollak previously determined that Plaintiffs are the prevailing party, that issue is not in dispute here. However, a court can lower the amount of the lodestar "to account for 'limited success' by a plaintiff, focusing on the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *McCutcheon v Am.'s Servicing Co.*,

560 F.3d 143, 151 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983)). The court may adjust the fee award downward due to the limited success of the prevailing party even if the unsuccessful claims "were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. The Supreme Court has reasoned that "in many cases claims involve a 'common core of facts' or are 'based on related legal theories,' and '[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'" *Damian J. v. Sch. Dist. of Phila.*, Civ. A. No. 06-3866, 2008 WL 1815302, at *5 (E.D. Pa. Apr. 22, 2008) (quoting *Hensley*, 461 U.S. at 435).

The most critical factor in determining attorneys' fees is the degree of success obtained. *Hensley*, 461 U.S. at 436. "There is no precise rule or formula for making these determinations." *Id.* Rather, the court has "a great deal of discretion to adjust the fee award in light of" the objections raised by the adverse party. *Rode*, 892 F.2d at 1183. Indeed, courts in this District have arrived at different conclusions when faced with cases in which the prevailing party only achieved partial success. *See, e.g.*, *Mary Courtney T. v. Sch. Dist. of Phila.*, Civ. A. No. 06-2278, 2009 WL 185426, at *9 (E.D. Pa. January 22, 2009) (reducing fees by 45% when plaintiff successfully recovered 25% of damages sought); *Damian J.*, 2008 WL 1815302, at *5 (reducing fees by 5% "to reflect plaintiff's partial success" because all claims arose out of a "common core of facts"); *Murphy v. Girard Sch. Dist.*, 134 F. Supp. 2d 431, 440 (E.D. Pa. 1999) (reducing fees by 85% based on plaintiffs' "very limited success" on primary objective in securing special education services).

## C.      Recoverable Fees for Fee Petition Litigation

"[L]egal services rendered in a dispute over the attorneys' fees due a prevailing plaintiff are recoverable under a fee shifting statute." *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d

1179, 1190 (3d Cir. 1995). However, attorneys' fees accrued for fee petition work are treated separately from fees accrued for work on the merits. *Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 924 (3d Cir. 1985). Consequently, the fee petition litigation must be considered "a separate entity subject to lodestar and *Hensley* reduction analysis." *Id*; *see also Maldonado v. Houston*, 256 F.3d 181, 188 (3d Cir. 2001) (granting all attorneys' fees for hours reasonably expended on litigation but reducing by 50% attorneys' fees reasonably expended on fee petition based on the limited success of the fee petition litigation).

While in "ordinary circumstances some reduction [of fees that accrued in fee petition litigation] is appropriate" when there is a reduction based on limited success in the underlying action, the fees need not be "reduced by a percentage corresponding to the reduction of the fees for work on the merits." *Durrett v. Cohen*, 790 F.2d 360, 363 (3d Cir. 1986) (remanding after district court gave no explanation for why it granted reduction on merits but not on fee petition); *see also Tevelson v. Life & Health Ins. Co. of Am.*, Civ. A. No. 83-11, 1986 WL 12783, at *6 (E.D. Pa. November 6, 1986) (reducing fees on merits by 34% and fees for fee petition by 12% because attorneys were largely successful with respect to hours spent on the fee petition).

### D.   Plaintiffs Achieved Limited Success in Their Administrative Action and Fee Petition Litigation

Plaintiffs request attorneys' fees in the amount of $77,435 for fees incurred during negotiations of the 2008-09 and 2009-10 Section 504 plans, the Due Process Hearing, enforcement of the Due Process Hearing ruling, and this fee petition litigation. The District seeks a complete or significant reduction of these fees on the ground that Plaintiffs did not achieve significant success in the Due Process Hearing.

8

1.      **2009-10 Service Plan and Due Process Hearing**

In the underlying Due Process Hearing, Plaintiffs sought nine major changes to the 2009-10 Section 504 agreement. They were successful in getting six of the nine changes incorporated into the agreement. One was expressly granted by the hearing officer. Three had been voluntarily provided previously but were incorporated into the Section 504 agreement. Two were achieved by settlement after the legal proceeding was initiated. Plaintiffs only failed to achieve three of their requests. In addition, Plaintiffs succeeded in getting the PTO to follow the Section 504 agreement.

Despite the District's contention to the contrary, the imposition of a legal duty to provide services is more than a "technical" victory. (*See* Def.'s Br. in Opp'n to Pls.' Mot. for Summ. J. [Def.'s Opp'n] at 9.) S.M. received no protection when the District had no legal obligation to provide certain services, and the District could cut off these services at its convenience. The legal protection S.M. gained through the Due Process Hearing is a significant victory.

However, Plaintiffs did not achieve complete success. Plaintiffs did not succeed on three of their core claims: a requirement that children wash their hands with soap and water after lunch, a requirement that the District wash shared equipment with soap and water, and a new monitoring system to make sure that the District was complying with the service plan. Plaintiffs dedicated many legal resources to achieving these objectives, including the use of an expert on the hand-washing and shared equipment issues.

Therefore, the Court finds that Plaintiffs achieved only partial success, and attorneys' fees accumulated for work on the 2009-10 service plan, Due Process Hearing, and subsequent enforcement of the Hearing Order will be reduced by 30% to reflect that Plaintiffs achieved the majority of the remedies they sought in the administrative action, but failed to succeed on all of their

9

requests.

### 2.      Fee Petition Litigation

"A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. Unfortunately, that is exactly what happened here. Almost two years and substantial sums have been spent litigating an issue that should have been agreed to years ago for a fraction of the cost. Nonetheless, given the District's unwillingness to reimburse Plaintiffs' legal fees at the conclusion of the Due Process Hearing, Plaintiffs, as the prevailing party, are legally entitled to recover reasonable attorneys' fees.

After the administrative proceeding, Plaintiffs had expended $36,922.50 in fees and $2,991.96 in costs. Plaintiffs expended an additional $17,600 on subsequent actions to enforce the April 2010 Hearing Order, leading up to the DOE Decision in November 2011. Now, two years after the conclusion of the Due Process Hearing, Plaintiffs have expended $77,435.00 in attorneys' fees. The District made a belated offer of judgment for a small fraction of the fees to date on November 17, 2011, after Judge Pollak had already held that Plaintiffs were the prevailing party. It is no wonder that Plaintiffs declined such a paltry sum.

The Court has serious concerns that the District forced Plaintiffs to play a two-year game of cat and mouse in order to achieve what they were entitled to. As a court may, in its discretion, reduce the recovery of attorneys' fees for the underlying action and fee petition by dissimilar percentages, the Court finds this action is an appropriate opportunity to exercise such discretion. *See Durrett*, 790 F.2d at 363. Accordingly, in light of these equitable concerns, the Court reduces Plaintiffs' attorneys' fees for the fee petition litigation by 10% to reflect Plaintiffs' limited success in the fee petition litigation.

10

### E.      Fee Award

#### 1.      Total Number of Hours and Rates

Plaintiffs request attorneys' fees and costs generated by McGuckin and Arnold in connection with the formation of the 2008-09 Section 504 service plan, the 2009-10 Section 504 service plan, and the Due Process Hearing. For the formation of the 2008-09 plan, Plaintiffs seek fees for 35 hours and 56 minutes. For the formation of the 2009-10 service plan, the Due Process Hearing, and the subsequent enforcement of the plan, Plaintiffs seek fees for 271 hours and 51 minutes. For the fee petition litigation, Plaintiffs seek fees for 90 hours and 18 minutes. For the purpose of a lodestar calculation, McGuckin's hourly rate is $150 per hour and Arnold's hourly rate is $200 per hour.

#### 2.      Defendant's Objections

"After the court determines the lodestar, it is within the court's discretion to adjust it in light of the adverse party's objections." *Robles v. U.S. Envtl. Universal Servs., Inc.*, Civ. A. No. 09-2377, 2012 WL 1033040, at *2 (D.N.J. Mar. 26, 2012). Defendant has raised five categories of objections to Plaintiffs' requested fees.

First, Defendant states that Plaintiffs are not entitled to fees incurred before the October 2, 2009 filing of the Due Process Complaint. (Def's Opp'n at 16.) Plaintiffs contend that Section 504 of the Rehabilitation Act does not bar fee shifting for initial investigation and pre-litigation work performed on a claim. (Pls.' Reply Br. at 4.) The Court will not award fees incurred for the formation of the 2008-09 service plan because Plaintiffs accepted that plan. However, the Court will award attorneys' fees starting on May 27, 2009, for work in connection with the 2009-10 service plan and the Due Process Hearing.

Second, Defendant claims that Plaintiffs are not entitled to fees or costs incurred after their

rejection of the $15,000 offer of judgement on November 17, 2011. (Def.'s Opp'n at 17.) However, Defendant offers no support for this claim. Defendant's settlement offer came after Judge Pollak declared that Plaintiffs were the prevailing party and inadequately covered fees to which Plaintiffs were entitled as the prevailing party. Given that Plaintiffs will receive more than the offer of judgment, the Court rejections this contention.

Third, Defendant argues that Plaintiffs are not entitled to expert fees because the expert testimony was related to claims that were ultimately unsuccessful. (*Id.* at 18.) Expert fees are available to prevailing parties under Section 504. *See, e.g.*, *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, ___ F. Supp. 2d ___, Civ. A. No. 11-574, 2012 WL 400686, at *12 (M.D. Pa. Feb. 8, 2012); *L.T. ex rel. B.T. v. Mansfield Twp. Sch. Dist.*, Civ. A. No. 04-1381, 2009 WL 2488181, at *2 (D.N.J. Aug. 11, 2009). While the Rehabilitation Act "does not explicitly provide for the recovery of expert fees as part of the costs, the Rehabilitation Act incorporates the remedies available under the Civil Rights Act of 1964, which specifically provides for the taxation of expert fees." *L.T. ex rel. B.T.*, 2009 WL 2488181, at *2; *see also* Civil Rights Act, 42 U.S.C. § 2000e-5(k) ("In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ."). Expert testimony was presented to prove that S.M. was at risk due to allergen exposure in the school environment. The Court will award expert fees along with the other costs, but will reduce them based on Plaintiffs' limited success. *See, e.g.*, *Field v. Haddonfield Bd. of Educ.*, 769 F. Supp. 1313, 1323-24 (D.N.J. 1991) (reducing expert fees by identical percentage as reduction for limited success achieved after noting that "[i]t would be anomalous to reduce the award of attorneys fees under *Hensley* in light of the plaintiffs' limited success in the administrative forum, yet require defendant to reimburse

plaintiffs 100% of their not insignificant expert fees").

Fourth, Defendant contends that attorneys' fees cannot be awarded for clerical or administrative tasks performed by Dawn Martini, paralegal for McGuckin. (Def.'s Opp'n at 20.) Courts often arrive at a blended rate that accounts for tasks performed by junior-level associates, paralegals, and clerical staff. *See, e.g.*, *Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 632. Here, however, McGuckin provided a lower blended rate to account for work done by Martini. Based on the Community Legal Services ("CLS") guidelines, the blended rate of $150 per hour charged by McGuckin is reasonable. (*See* Pls.' Mot. for Summ. J. Ex. 4 [CLS Guidelines].)

Finally, Defendant claims that Plaintiffs are not entitled to attorneys' fees on a number of grounds under the Individuals with Disabilities Education Act ("IDEA"). (Def.'s Opp'n at 17, 20.) Since this case was brought under Section 504 of the Rehabilitation Act, this argument is without merit. *See, e.g.*, *L.T.*, 2009 WL 2488181, at *2 (noting differences in taxable costs under Rehabilitation Act and IDEA).

Defendant has not objected to the reasonableness of the hourly rate or the hours expended for either attorney in this litigation. Therefore, the Court will accept this amount as reasonable. *See United States v. Eleven Vehicles*, 200 F.3d 203, 212 (3d Cir. 2000) ("A district court may not 'decrease a fee award based on factors not raised at all by an adverse party.'") (quoting *Rode*, 892 F.2d at 1183).

### 3. Calculation of Lodestar for 2009-10 Service Plan, Due Process Hearing, and Enforcement of Due Process Hearing

Plaintiffs are entitled to 7 hours and 45 minutes for McGuckin's work on the 2009-10 service plan at an hourly rate of $150 per hour, totaling $1,162.50.

Plaintiffs are entitled to work totaling 264 hours and 6 minutes for Arnold's work on the 2009-10 service plan, the Due Process Hearing, and enforcement of the Due Process Hearing ruling at an hourly rate of $200 per hour, totaling $52,820.

Therefore, after a 30% reduction for limited success, Plaintiffs are entitled to $37,787.75 in attorneys' fees for work on the 2009-10 service plan, the Due Process Hearing, and the enforcement of the Due Process Hearing ruling.

### 4.    Calculation of Lodestar for Work on Fee Petition

Plaintiffs are entitled to 90 hours and 18 minutes worth of work on the fee petition at a rate of $200 per hour, totaling $18,060. After a 10% reduction for limited success, the Court awards $16,254 for fee petition work.

### 5.    Costs

Plaintiffs request $525.96 in costs and $2,816 in expert fees. The expert fees will be reduced by 30% to $1971.20 based on Plaintiffs' limited success. Plaintiffs will recover $2,497.16 for costs and expert fees.

## III.    CONCLUSION

For the reasons set forth above, the Court will deny Plaintiffs all attorneys' fees expended in the formation of the 2008-09 Section 504 service plan. The Court will, however, award attorneys' fees for the formation of the 2009-10 service plan, the Due Process Hearing, and the subsequent enforcement of the service plan, with a reduction of 30% for limited success. Plaintiffs are also awarded attorneys' fees for work on the fee petition, with a 10% reduction for limited success. Thus, Plaintiffs are entitled to $54,041.75 in fees and $2,497.16 in expert fees and costs. An Order

consistent with this Memorandum will be docketed separately.